| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| WRIGHT, FINLAY & ZAK, LLP<br>Nichole L. Glowin, Esq. SBN 262932<br>4665 MacArthur Court, Ste. 280<br>Newport Beach, CA 92660<br>TEL: (949) 477-5050<br>FAX: (949) 608-9142<br>nglowin@wrightlegal.net<br><br><br>☐ *Movant appearing without an attorney*<br>☒ *Attorney for Movant* | |

**UNITED STATES BANKRUPTCY COURT**
**CENTRAL DISTRICT OF CALIFORNIA - LOS ANGELES DIVISION**

| In re:<br><br>CENELIA NAVARRO<br><br><br><br><br><br><br><br>Debtor(s). | CASE NO.: 2:10-bk-47444-WB<br>CHAPTER: 13<br><br>**NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)**<br><br>DATE: 3/17/2015<br>TIME: 10:00 am<br>COURTROOM: 1375 |
|---|---|

**Movant:** Seterus, Inc. as the authorized subservicer for Federal National Mortgage Association ("Fannie Mae"), Creditor c/o Seterus, Inc., its successors and/or assigns

1. **Hearing Location**:

    ☒ 255 East Temple Street, Los Angeles, CA 90012      ☐ 411 West Fourth Street, Santa Ana, CA 92701

    ☐ 21041 Burbank Boulevard, Woodland Hills, CA 91367      ☐ 1415 State Street, Santa Barbara, CA 93101

    ☐ 3420 Twelfth Street, Riverside, CA 92501

2. Notice is given to the Debtor and trustee (*if any*)(Responding Parties), their attorneys (*if any*), and other interested parties that on the date and time and in the courtroom stated above, Movant will request that this court enter an order granting relief from the automatic stay as to Debtor and Debtor's bankruptcy estate on the grounds set forth in the attached Motion.

3. To file a response to the motion, you may obtain an approved court form at www.cacb.uscourts.gov/forms for use in preparing your response (optional LBR form F 4001-1.RFS.RESPONSE), or you may prepare your response using the format required by LBR 9004-1 and the Court Manual.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                     Page 1                     **F 4001-1.RFS.RP.MOTION**

4.  When serving a response to the motion, serve a copy of it upon the Movant's attorney (or upon Movant, if the motion was filed by an unrepresented individual) at the address set forth above.

5.  If you fail to timely file and serve a written response to the motion, or fail to appear at the hearing, the court may deem such failure as consent to granting of the motion.

6.  ☒  This motion is being heard on REGULAR NOTICE pursuant to LBR 9013-1(d).  If you wish to oppose this motion, you must file and serve a written response to this motion no later than 14 days before the hearing and appear at the hearing.

7.  ☐  This motion is being heard on SHORTENED NOTICE pursuant to LBR 9075-1(b).  If you wish to oppose this motion, you must file and serve a response no later than (*date*) _____ and (*time*) _____; and, you may appear at the hearing.

a.  ☐  An application for order setting hearing on shortened notice was not required (according to the calendaring procedures of the assigned judge).

b.  ☐  An application for order setting hearing on shortened notice was filed and was granted by the court and such motion and order have been or are being served upon the Debtor and upon the trustee (if any).

c.  ☐  An application for order setting hearing on shortened notice was filed and remains pending.  After the court rules on that application, you will be served with another notice or an order that specifies the date, time and place of the hearing on the attached motion and the deadline for filing and serving a written opposition to the motion.

Date:  02/13/2015

WRIGHT, FINLAY & ZAK, LLP
Printed name of law firm (if applicable)

Nichole L. Glowin
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
Signature of individual Movant or attorney for Movant

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 2                          **F 4001-1.RFS.RP.MOTION**

# MOTION FOR RELIEF FROM THE AUTOMATIC STAY AS TO REAL PROPERTY

1. **Movant is the:**

   ☐ Holder: Movant has physical possession of a promissory note that either (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.

   ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g., mortgage or deed of trust) or (2) is the assignee of the beneficiary.

   ☐ Servicing agent authorized to act on behalf of the Holder or Beneficiary.

   ☐ Other (*specify*):

2. **The Property at Issue (Property):**

   a. Address:

   *Street address*: 1759 Firestone Boulevard
   *Unit/suite number*:
   *City, state, zip code*: Los Angeles, CA 90001-4059

   b. Legal description, or document recording number (including county of recording), as set forth in Movant's deed of trust (attached as Exhibit __1____):

3. **Bankruptcy Case History:**

   a. A ☒ voluntary ☐ involuntary  bankruptcy petition under chapter  ☐ 7  ☐ 11  ☐ 12  ☒ 13
   was filed on (*date*) __09/02/2010__.

   b. ☐ An order to convert this case to chapter  ☐ 7  ☐ 11  ☐ 12  ☐ 13  was entered on (*date*) _____.

   c. ☒ A plan, if any, was confirmed on (*date*) __07/19/2011__.  True and correct copies of the Plan and Order Confirming the Plan are attached hereto as Exhibit "3," collectively.

4. **Grounds for Relief from Stay:**

   a. ☒ Pursuant to 11 U.S.C. § 362(d)(1), cause exists to grant Movant relief from stay as follows:

   (1) ☐ Movant's interest in the Property is not adequately protected.

      (A) ☐ Movant's interest in the Property is not protected by an adequate equity cushion.

      (B) ☐ The fair market value of the Property is declining and payments are not being made to Movant sufficient to protect Movant's interest against that decline.

      (C) ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

   (2) ☐ The bankruptcy case was filed in bad faith.

      (A) ☐ Movant is the only creditor, or one of very few creditors, listed or scheduled in the Debtor's case commencement documents.

      (B) ☐ The Property was transferred to the Debtor either just before the bankruptcy filing or after the filing.

      (C) ☐ A non-individual entity was created just prior to the bankruptcy petition date for the sole purpose of filing this bankruptcy case.

      (D) ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

      (E) ☐ The Debtor filed only a few case commencement documents with the bankruptcy petition.  Schedules and the statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

      (F) ☐ Other (*see attached continuation page*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

(3) ☒ (*Chapter 12 or 13 cases only*)

    (A) ☐ All payments on account of the Property are being made through the plan.
        ☐ Preconfirmation ☐ Postconfirmation  plan payments have not been made to the chapter 12 trustee or chapter 13 trustee.

    (B) ☒ Postpetition mortgage payments due on the note secured by a deed of trust on the Property have not been made to Movant.

(4) ☐ The Debtor filed a Statement of Intentions that indicates the Debtor intends to surrender the Property.

(5) ☐ The Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

(6) ☐ For other cause for relief from stay, see attached continuation page.

b. ☒ Pursuant to 11 U.S.C. § 362(d)(2)(A), the Debtor has no equity in the Property; and, pursuant to § 362(d)(2)(B), the Property is not necessary to an effective reorganization.

c. ☐ Pursuant to 11 U.S.C. § 362(d)(3), the Debtor has failed, within the later of 90 days after the order for relief or 30 days after the court determined that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B) to file a reasonable plan of reorganization or to commence monthly payments.

d. ☐ Pursuant to 11 U.S.C. § 362(d)(4), the Debtor's filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    (1) ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval; or

    (2) ☐ Multiple bankruptcy cases affecting the Property.

5. ☐ **Grounds for Annulment of the Stay.** Movant took postpetition actions against the Property or the Debtor.

a. ☐ These actions were taken before Movant knew the bankruptcy case had been filed, and Movant would have been entitled to relief from the stay to proceed with these actions.

b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

c. ☐ Other (*specify*):

6. **Evidence in Support of Motion:  (D*eclaration(s) MUST be signed under penalty of perjury and attached to this motion*)**

a. The REAL PROPERTY DECLARATION on page 6 of this motion.

b. ☐ Supplemental declaration(s).

c. ☐ The statements made by Debtor under penalty of perjury concerning Movant's claims and the Property as set forth in Debtor's case commencement documents.  Authenticated copies of the relevant portions of the case commencement documents are attached as Exhibit _____.

d. ☒ Other:
    Note, Deed of Trust, Assignment, Plan and Payment History.

7. ☐ **An optional Memorandum of Points and Authorities is attached to this motion.**

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*          Page 4          **F 4001-1.RFS.RP.MOTION**

**Movant requests the following relief:**

1.  Relief from the stay is granted under: ☒ 11 U.S.C. § 362(d)(1)  ☒ 11 U.S.C. § 362(d)(2)  ☐ 11 U.S.C. § 362(d)(3).

2.  ☒ Movant (and any successors or assigns) may proceed under applicable nonbankruptcy law to enforce its remedies to foreclose upon and obtain possession of the Property.

3.  ☒ Movant, or its agents, may, at its option, offer, provide and enter into a potential forebearance agreement, loan modification, refinance agreement or other loan workout or loss mitigation agreement.  Movant, through its servicing agent, may contact the Debtor by telephone or written correspondence to offer such an agreement.  Any such agreement shall be nonrecourse unless stated in a reaffirmation agreement.

3.  ☐ Confirmation that there is no stay in effect.

4.  ☐ The stay is annulled retroactive to the bankruptcy petition date.  Any postpetition actions taken by Movant to enforce its remedies regarding the Property shall not constitute a violation of the stay.

5.  ☐ The co-debtor stay of 11 U.S.C. §1201(a) or § 1301(a) is terminated, modified or annulled as to the co-debtor, on the same terms and conditions as to the Debtor.

6.  ☒ The 14-day stay prescribed by FRBP 4001(a)(3) is waived.

7.  ☐ A designated law enforcement officer may evict the Debtor and any other occupant from the Property regardless of any future bankruptcy filing concerning the Property for a period of 180 days from the hearing on this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

8.  ☐ Relief from the stay is granted under 11 U.S.C. § 362(d)(4):  If recorded in compliance with applicable state laws governing notices of interests or liens in real property, the order is binding in any other case under this title purporting to affect the Property filed not later than 2 years after the date of the entry of the order by the court, except that a debtor in a subsequent case under this title may move for relief from the order based upon changed circumstances or for good cause shown, after notice and hearing.

9.  ☐ The order is binding and effective in any bankruptcy case commenced by or against any debtor who claims any interest in the Property for a period of 180 days from the hearing of this Motion:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

10. ☐ The order is binding and effective in any future bankruptcy case, no matter who the debtor may be:
    ☐ without further notice, or  ☐ upon recording of a copy of this order or giving appropriate notice of its entry in compliance with applicable nonbankruptcy law.

11. ☐ Upon entry of the order, for purposes of Cal. Civ. Code § 2923.5, the Debtor is a borrower as defined in Cal. Civ. Code § 2920.5(c)(2)(C).

12. ☐ If relief from stay is not granted, adequate protection shall be ordered.

13. ☐ See attached continuation page for other relief requested.

Date:  02/13/2015

WRIGHT, FINLAY & ZAK, LLP
_____
Printed name of law firm (*if applicable*)
Nichole L. Glowin
_____
Printed name of individual Movant or attorney for Movant

/s/ Nichole L. Glowin
_____
Signature of individual Movant or attorney for Movant

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

# REAL PROPERTY DECLARATION

I, (*print name of Declarant*) Derek Ghattas _____, declare:

1. I have personal knowledge of the matters set forth in this declaration and, if called upon to testify, I could and would competently testify thereto. I am over 18 years of age.  I have knowledge regarding Movant's interest in the real property that is the subject of this Motion (Property) because (*specify*):

   a. ☐ I am the Movant.

   b. ☐ I am employed by Movant as (*state title and capacity*):

   c. ☒ Other (*specify*): I am employed as a Bankruptcy Specialist with Seterus, Inc. who services the Note & Deed of Trust
on behalf of the holder Fannie Mae. Pursuant to our Power of Attorney Agreement attached hereto as Exhibit "2" and its servicing responsibilities Seterus has the
personal knowledge necessary to make this declaration in support of the Motion.

2. a. ☒ I am one of the custodians of the books, records and files of Movant that pertain to loans and extensions of credit given to Debtor concerning the Property.  I have personally worked on the books, records and files, and as to the following facts, I know them to be true of my own knowledge or I have gained knowledge of them from the business records of Movant on behalf of Movant.  These books, records and files were made at or about the time of the events recorded, and which are maintained in the ordinary course of Movant's business at or near the time of the actions, conditions or events to which they relate.  Any such document was prepared in the ordinary course of business of Movant by a person who had personal knowledge of the event being recorded and had or has a business duty to record accurately such event.  The business records are available for inspection and copies can be submitted to the court if required.

   b. ☐ Other (*see attached):*

3. The Movant is:

   a. ☐ Holder: Movant has physical possession of a promissory note that (1) names Movant as the payee under the promissory note or (2) is indorsed to Movant, or indorsed in blank, or payable to bearer.  A true and correct copy of the note, with affixed allonges/indorsements, is attached as Exhibit _____.

   b. ☒ Beneficiary: Movant is either (1) named as beneficiary in the security instrument on the subject property (e.g.,mortgage or deed of trust) or (2) is the assignee of the beneficiary.  True and correct copies of the recorded security instrument and assignments are attached as Exhibit  6 ____.

   c. ☐ Servicing agent authorized to act on behalf of the:

      ☐ Holder.
      ☐ Beneficiary.

   d. ☐ Other (*specify*):

4. a. The address of the Property is:

   *Street address*: 1759 Firestone Boulevard
   *Unit/suite no.*:
   *City, state, zip code*: Los Angeles, CA 90001-4059

   b. The legal description of the Property or document recording number (including county of recording) set forth in the Movant's deed of trust is:

   20100225963, Los Angeles County, CA. See also Exhibit "1" attached hereto, Legal Description.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                                Page 6                                **F 4001-1.RFS.RP.MOTION**

5. Type of property (*check all applicable boxes*):

    a. ☒ Debtor's principal residence      b. ☐ Other residence

    c. ☐ Multi-unit residential      d. ☐ Commercial

    e. ☐ Industrial      f. ☐ Vacant land

    g. ☐ Other (*specify*):

6. Nature of the Debtor's interest in the Property:

    a. ☒ Sole owner

    b. ☐ Co-owner(s) (*specify*):

    c. ☐ Lienholder (*specify*):

    d. ☐ Other (*specify*):

    e. ☒ The Debtor ☒ did ☐ did not  list the Property in the Debtor's schedules.

    f. ☐ The Debtor acquired the interest in the Property by ☐ grant deed ☐ quitclaim deed ☐ trust deed.

        The deed was recorded on (*date*) _____.

7. Movant holds a ☒ deed of trust ☐ judgment lien ☐ other (*specify*) _____
that encumbers the Property.

    a. ☒ A true and correct copy of the document as recorded is attached as Exhibit __4__.

    b. ☒ A true and correct copy of the promissory note or other document that evidences the Movant's claim is attached as Exhibit __5__.

    c. ☒ A true and correct copy of the assignment(s) transferring the beneficial interest under the note and deed of trust to Movant is attached as Exhibit __6__.

8. Amount of Movant's claim with respect to the Property:

|  |  | PREPETITION | POSTPETITION | TOTAL |
|---|---|---|---|---|
| a. | Principal: | $ | $ | $ 264,514.48 |
| b. | Accrued interest: | $ | $ | $ 6,040.88 |
| c. | Late charges | $ | $ | $ 635.92 |
| d. | Costs (attorney's fees, foreclosure fees, other costs): | $ | $ | $ 1,251.00 |
| e. | Advances (property taxes, insurance): | $ | $ | $ 0.00 |
| f. | Less suspense account or partial balance paid: | $[          ] | $[          ] | $[753.01          ] |
| g. | TOTAL CLAIM as of (*date*): 02/04/2015 | $ | $ | $ 271,689.27 |

    h. ☐ Loan is all due and payable because it matured on (*date*) _____

9. Status of Movant's foreclosure actions relating to the Property (*fill the date or check the box confirming no such action has occurred*):

    a. Notice of default recorded on (*date*) _____ or ☒ none recorded.

    b. Notice of sale recorded on (*date*) _____ or ☒ none recorded.

    c. Foreclosure sale originally scheduled for (*date*) _____ or ☒ none scheduled.

    d. Foreclosure sale currently scheduled for (*date*) _____ or ☒ none scheduled.

    e. Foreclosure sale already held on (*date*) _____ or ☒ none held.

    f. Trustee's deed upon sale already recorded on (*date*) _____ or ☒ none recorded.

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

10. Attached (*optional*) as Exhibit 7 is a true and correct copy of a POSTPETITION statement of account that accurately reflects the dates and amounts of all charges assessed to and payments made by the Debtor since the bankruptcy petition date.

11. ☐ (*chapter 7 and 11 cases only*) Status of Movant's loan:

   a. Amount of current monthly payment as of the date of this declaration: $_____ for the month of _____ 20___.

   b. Number of payments that have come due and were not made: _____. Total amount: $_____

   c. Future payments due by time of anticipated hearing date (*if applicable*):

      An additional payment of $_____ will come due on (*date*) _____, and on the _____ day of each month thereafter. If the payment is not received within _____ days of said due date, a late charge of $_____ will be charged to the loan.

   d. The fair market value of the Property is $_____, established by:

      (1) ☐ An appraiser's declaration with appraisal is attached as Exhibit _____.

      (2) ☐ A real estate broker or other expert's declaration regarding value is attached as Exhibit _____.

      (3) ☐ A true and correct copy of relevant portion(s) of the Debtor's schedules is attached as Exhibit _____.

      (4) ☐ Other (*specify*):

   e. **Calculation of equity/equity cushion in Property:**

      Based upon ☐ a preliminary title report ☐ the Debtor's admissions in the schedules filed in this case, the Property is subject to the following deed(s) of trust or lien(s) in the amounts specified securing the debt against the Property:

| | Name of Holder | Amount as Scheduled by Debtor (*if any*) | Amount known to Declarant and Source |
|---|---|---|---|
| 1st deed of trust: | | $ | $ |
| 2nd deed of trust: | | $ | $ |
| 3rd deed of trust: | | $ | $ |
| Judgment liens: | | $ | $ |
| Taxes: | | $ | $ |
| Other: | | $ | $ |
| **TOTAL DEBT: $** | | | |

   f. Evidence establishing the existence of these deed(s) of trust and lien(s) is attached as Exhibit _____ and consists of:

      (1) ☐ Preliminary title report.

      (2) ☐ Relevant portions of the Debtor's schedules.

      (3) ☐ Other (*specify*):

   g. ☐ **11 U.S.C. § 362(d)(1) - Equity Cushion:**
      I calculate that the value of the "equity cushion" in the Property exceeding Movant's debt and any lien(s) senior to Movant's debt is $_____ and is _____% of the fair market value of the Property.

   h. ☐ **11 U.S.C. § 362(d)(2)(A) - Equity:**
      By subtracting the total amount of all liens on the Property from the value of the Property as set forth in Paragraph 11(e) above, I calculate that the Debtor's equity in the Property is $_____.

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

June 2014                                    Page 8                           **F 4001-1.RFS.RP.MOTION**

i. ☐ Estimated costs of sale: $_____ (estimate based upon _____% of estimated gross sales price)

j. ☐ The fair market value of the Property is declining because:


12. ☒ (*Chapter 12 and 13 cases only*) Status of Movant's loan and other bankruptcy case information:

a. A 341(a) meeting of creditors is currently scheduled for (*or concluded on*) the following date: <u>10/19/2010</u>.
A plan confirmation hearing currently scheduled for (or concluded on) the following date: <u>06/23/2011</u>.
A plan was confirmed on the following date (*if applicable*): <u>07/19/2011</u>.

b. Postpetition preconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of Each Payment or Late Charge | Total |
|---|---|---|---|
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |

(See attachment for additional breakdown of information attached as Exhibit _____.)

c. Postpetition postconfirmation payments due BUT REMAINING UNPAID since the filing of the case:

| Number of Payments | Number of Late Charges | Amount of each Payment or Late Charge | Total |
|---|---|---|---|
| 5 |  | $ 1,996.43 | $ 9,982.15 |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  |  | $ | $ |
|  | 8 | $ 79.49 | $ 635.92 |
|  |  | $ | $ |
|  |  | $ | $ |

d. Postpetition advances or other charges due but unpaid:                                          $ 225.00
(*For details of type and amount, see Exhibit <u>8</u>   *)

e. Attorneys' fees and costs: for filing this Motion                                          $ 1,026.00
(*For details of type and amount, see Exhibit _____*)

f. Less suspense account or partial paid balance:                              $[ 753.01                    ]

TOTAL POSTPETITION DELINQUENCY:        $ 11,116.06

g. Future payments due by time of anticipated hearing date (*if applicable*): <u>1</u>          .
An additional payment of $ <u>1,996.43</u>          will come due on <u>03/01/2015</u>, and on
the <u>1st</u> day of each month thereafter. If the payment is not received by the <u>15</u> day of the month, a late charge of $<u>79.49</u>          will be charged to the loan.

h. Amount and date of the last 3 postpetition payments received from the Debtor in good funds, regardless of how applied (if applicable):
$ <u>1,996.43</u>          received on (*date*) <u>12/01/2014</u>    SEE EXHIBIT 7 ATTACHED HERETO, PAYMENT
$ <u>1,996.43</u>          received on (*date*) <u>01/02/2015</u>    HISTORY.
$ <u>1,996.43</u>          received on (*date*) <u>02/02/2015</u>

i. ☐ The entire claim is provided for in the chapter 12 or 13 plan and postpetition plan payments are delinquent. A plan payment history is attached as Exhibit _____. See attached declaration(s) of chapter 12 trustee or 13 trustee regarding receipt of payments under the plan (*attach LBR form F 4001-1.DEC.AGENT.TRUSTEE*).

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                              Page 9                              **F 4001-1.RFS.RP.MOTION**

13. ☐ Proof of insurance regarding the Property has not been provided to Movant, despite the Debtor's obligation to insure the collateral under the terms of Movant's contract with the Debtor.

14. ☐ The court determined on (*date*) _____ that the Property qualifies as "single asset real estate" as defined in 11 U.S.C. § 101(51B). More than 90 days have passed since the filing of the bankruptcy petition; more than 30 days have passed since the court determined that the Property qualifies as single asset real estate; the Debtor has not filed a plan of reorganization that has a reasonable possibility of being confirmed within a reasonable time; or the Debtor has not commenced monthly payments to Movant as required by 11 U.S.C. § 362(d)(3).

15. ☐ The Debtor's intent is to surrender the Property. A true and correct copy of the Debtor's statement of intentions is attached as Exhibit _____.

16. ☐ Movant regained possession of the Property on (*date*) _____, which is ☐ prepetition ☐ postpetition.

17. ☐ The bankruptcy case was filed in bad faith:

    a. ☐ Movant is the only creditor or one of few creditors listed in the Debtor's case commencement documents.

    b. ☐ Other bankruptcy cases have been filed in which an interest in the Property was asserted.

    c. ☐ The Debtor filed only a few case commencement documents. Schedules and a statement of financial affairs (or chapter 13 plan, if appropriate) have not been filed.

    d. ☐ Other (*specify*):

18. ☐ The filing of the bankruptcy petition was part of a scheme to delay, hinder, or defraud creditors that involved:

    a. ☐ The transfer of all or part ownership of, or other interest in, the Property without the consent of Movant or court approval. See attached continuation page for facts establishing the scheme.

    b. ☐ Multiple bankruptcy cases affecting the Property include:

        1. Case name: _____
          Chapter: _____ Case number: _____
          Date filed: _____ Date discharged: _____ Date dismissed: _____
          Relief from stay regarding the Property ☐ was ☐ was not granted.

        2. Case name: _____
          Chapter: _____ Case number: _____
          Date filed: _____ Date discharged: _____ Date dismissed: _____
          Relief from stay regarding the Property ☐ was ☐ was not granted.

        3. Case name: _____
          Chapter: _____ Case number: _____
          Date filed: _____ Date discharged: _____ Date dismissed: _____
          Relief from stay regarding the Property ☐ was ☐ was not granted.

    ☐ See attached continuation page for information about other bankruptcy cases affecting the Property.

    ☐ See attached continuation page for facts establishing that the multiple bankruptcy cases were part of a scheme to delay, hinder, or defraud creditors.

---

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                        Page 10                        **F 4001-1.RFS.RP.MOTION**

19. ☐ Enforcement actions taken after the bankruptcy petition was filed are specified in the attached supplemental declaration(s).

   a. ☐ These actions were taken before Movant knew the bankruptcy petition had been filed, and Movant would have been entitled to relief from stay to proceed with these actions.

   b. ☐ Movant knew the bankruptcy case had been filed, but Movant previously obtained relief from stay to proceed with these enforcement actions in prior bankruptcy cases affecting the Property as set forth in Exhibit _____.

   c. ☐ For other facts justifying annulment, see attached continuation page.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.


2/12/15 _____        Derek Ghattas _____        _____
*Date*                       *Printed name*                        *Signature*

This form is mandatory. It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2014*                        Page 11                        **F 4001-1.RFS.RP.MOTION**

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding. My business address is:

4665 MacArthur Court, Ste. 280, Newport Beach, CA 92660

A true and correct copy of the foregoing document entitled: **NOTICE OF MOTION AND MOTION FOR RELIEF FROM THE AUTOMATIC STAY UNDER 11 U.S.C. § 362 (with supporting declarations) (REAL PROPERTY)** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) _02/13/2015_, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

Nancy K. Curry, Ch. 13 Trustee: ecfnc@trustee13.com
United States Trustee: ustpregion16.la.ecf@usdoj.gov
Wilo Nunez, Counsel for Debtor: lazmach@aol.com
Nichole Glowin, Counsel for Movant: nglowin@wrightlegal.net

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _02/13/2015_, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

Honorable Julia W. Brand
Edward R. Roybal Federal Building and Courthouse
255 E. Temple Street, Suite 1382 / Courtroom 1375
Los Angeles, CA 90012

☒ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| | | |
|---|---|---|
| _02/13/2015_ | Brandon Quon | /s/ Brandon Quon |
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

| In re                          (SHORT TITLE) | CHAPTER: 13 |
|---|---|
| CENELIA NAVARRO | |
| Debtor(s). | CASE NO.: 2:10-bk-47444-WB |

**ADDITIONAL SERVICE INFORMATION** (if needed):

ADDITIONAL PARTIES SERVED BY ECF ELECTRONIC NOTICE:

Kristin Webb, Requested Courtesy Notice: bknotice@rcolegal.com
Edward Weber, Requested Courtesy Notice: bknotice@rcolegal.com
Andrew Goldberg, Counsel for Fannie Mae, Courtesy Notice: agoldberg@rosicki.com
Vanda, LLC, Creditor, Requested Courtesy Notice: bncmail@w-legal.com

ADDITIONAL PARTIES SERVED BY US MAIL:

Cenelia Navarro
1759 Firestone Blvd.
Los Angeles, CA 90001
DEBTOR

Wilo B Nunez
Law Offices of Wilo Nunez
7340 Firestone Bl Ste 123
Downey, CA 90241
COUNSEL FOR DEBTOR

Nancy K Curry (TR)
1000 Wilshire Blvd., Suite 870
Los Angeles, CA 90017
CHAPTER 13 TRUSTEE

JP Morgan Chase
c/o Bill Taylor
Four S Technologies LLC
200 Sheffield St Ste 301
Mountainside, NJ 07092
JUNIOR LIENHOLDER

JP Morgan Chase
Attn: CT Corp. Service, Agent for Service of Process
818 West Seventh Street, 2nd Floor
Los Angeles, CA 90017
JUNIOR LIENHOLDER

PARTIES SERVED BY CERTIFED MAIL:

JP Morgan Chase
Attn: Jamie Dimon, CEO and Agent for Service of Process
270 Park Avenue
New York City, NY 10017
JUNIOR LIENHOLDER

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*January 2009*                                                                 **F 4001-1M.RP**

Order No.

**EXHIBIT "A"**
**LEGAL DESCRIPTION**

THE LAND DESCRIBED HEREIN IS SITUATED IN THE STATE OF CALIFORNIA, COUNTY OF LOS ANGELES, UNINCORPORATED AREA, AND IS DESCRIBED AS FOLLOWS:

LOT 27 OF THE EAST 5 FEET OF LOT 28, BLOCK H OF THE EDGEWOOD PARK TRACT,  AS PER MAP RECORDED IN BOOK 6, PAGES 123 IN THE OFFICE OF THE COUNTY  RECORDER OF SAID COUNTY.

EXCEPTING THEREFROM ALL OIL, GAS, MINERALS, AND OTHER HYDROCARBON SUBSTANCES LYING BELOW THE SURFACE OF SAID LAND, BUT WITH NO RIGHT OF SURFACE ENTRY, AS DISCLOSED IN DEEDS OF RECORD.

PARCEL NUMBER(S): 6027-033-025

EXHIBIT \

Washington County, Oregon
05/14/2010 08:39:23 AM
D-PA          Cnt=1  Stn=11  C WHITE
$10.00 $5.00 $11.00 $15.00 - Total = $41.00

**2010-036469**



I, Richard Hobernicht, Director of Assessment and
Taxation and Ex-Officio County Clerk for Washington
County, Oregon, do hereby certify that the within
instrument of writing was received and recorded in the
book of records of said county.
Richard Hobernicht, Director of Assessment and
Taxation, Ex-Officio County Clerk

## LIMITED POWER OF ATTORNEY

Fannie Mae ("Federal National Mortgage Association"), a corporation organized and existing under the laws of the United States of America, having an office for the conduct of business at 13150 Worldgate Drive, Herndon, Virginia 20170, constitute and appoints, IBM Lender Business Process Services INC., 8501 IBM Drive, Building 201# 2DD188, Charlotte, North Carolina 28262 ( headquarters) a corporation organized and existing under the laws of the state of Delaware, its true and lawful Attorney-in-Fact, and in its name, place, and stead and for its use and benefits, to execute, endorse, and acknowledge all documents customarily and reasonably necessary and appropriate for:

1.  the release of a borrower from personal liability under the mortgage or deed of trust following an approved transfer of ownership of the security property;

2.  the full satisfaction or release of a mortgage or the request to a trustee for a full reconveyance of a deed of trust;

3.  the partial release or discharge of a mortgage or the request to a trustee for a partial reconveyance or discharge of a deed of trust;

4.  the modification or extension of a mortgage or deed of trust;

5.  the subordination of the lien of a mortgage or deed of trust;

6.  the completion, termination, cancellation, or rescission of foreclosure relating to a mortgage or deed of trust, including (but not limited to) the following actions:

    a.  the appointment of a successor or substitute trustee under a deed of trust, in accordance with state law and the deed of trust;
    b.  the issuance of a statement of breach or nonperformance;
    c.  the issuance or cancellation or rescission of notices of default;
    d.  the cancellation or rescission of notices of sale; and
    e.  the issuance of such other documents as may be necessary under the terms of the mortgage, deed of trust, or state law to expeditiously complete said transactions, including, but not limited to, assignments or endorsements of mortgages, deeds of trust, or promissory notes to convey title from Fannie Mae to the Attorney-in-Fact under this Limited Power of Attorney;

7.  the conveyance of properties to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), or a state or private mortgage insurer; and

8   the assignment or endorsement of mortgages, deeds of trust, or promissory notes to the Federal Housing Administration (FHA), the Department of Housing and Urban Development (HUD), the Department of Veterans Affairs (VA), the Rural Housing Service (RHS), a state or private mortgage insurer, or Mortgage Electronic Registration System (MERS[TM]).

# EXHIBIT 2

2

The undersigned gives to said Attorney-in-Fact full power and authority to execute such instruments and to do and perform all and every act and thing requisite, necessary, and proper to carry into effect the power or powers granted by or under this Limited Power of Attorney as fully, to all intents and purposes, as the undersigned might or could do, and hereby does ratify and confirm all said Attorney-in-Fact shall lawfully do or cause to be done by authority hereof.

Third parties without actual notice may rely upon the power granted under this Limited Power of Attorney upon the exercise of such power of the Attorney-in-Fact that all conditions precedent to such exercise of power has been satisfied and that this Limited Power of Attorney has not been revoked unless an instrument of revocation has been recorded.

IN WITNESS WHEREOF, I have hereunto set my hand this April 26, 2010.

FANNIE MAE ("Federal National Mortgage Association")

By: _____
    Shanicka Singleton, Asst. Vice President

By: _____
    Carol Duda, Asst. Secretary

STATE OF VIRGINIA }
COUNTY OF FAIRFAX}

The foregoing instrument was acknowledged before me, a notary public commissioned in Fairfax County, Virginia this April 26, 2010, by Shanicka Singleton Assistant Vice President, and by, Carol Duda, Assistant Secretary of Fannie Mae (Federal National Mortgage Association), a United States Corporation, on behalf of the corporation.

I, *Richard W. Hobernicht*, Director of Assessment and Taxation and Ex-Officio County Clerk for Washington County, do hereby certify this to be a true and correct copy of the original.

Date: may 14, 2010

By: _____  Deputy

# *Delaware*

PAGE  1

## *The First State*

I, JEFFREY W. BULLOCK, SECRETARY OF STATE OF THE STATE OF
DELAWARE, DO HEREBY CERTIFY THE ATTACHED IS A TRUE AND CORRECT
COPY OF THE CERTIFICATE OF AMENDMENT OF "IBM LENDER BUSINESS
PROCESS SERVICES, INC.", CHANGING ITS NAME FROM "IBM LENDER
BUSINESS PROCESS SERVICES, INC." TO "SETERUS, INC.", FILED IN
THIS OFFICE ON THE FIRST DAY OF JUNE, A.D. 2011, AT 5:39 O'CLOCK
P.M.

A FILED COPY OF THIS CERTIFICATE HAS BEEN FORWARDED TO THE
NEW CASTLE COUNTY RECORDER OF DEEDS.

Jeffrey W. Bullock, Secretary of State

4251081  8100

110677767

AUTHENTICATION: 8803161

DATE: 06-02-11

You may verify this certificate online
at corp.delaware.gov/authver.shtml



*State of Delaware*
*Secretary of State*
*Division of Corporations*
*Delivered 06:04 PM 06/01/2011*
*FILED 05:39 PM 06/01/2011*
*SRV 110677767 - 4251081 FILE*

# STATE OF DELAWARE
# CERTIFICATE OF AMENDMENT
# OF CERTIFICATE OF INCORPORATION

The corporation organized and existing under and by virtue of the General Corporation Law of the State of Delaware does hereby certify:

**FIRST**: That at a meeting of the Board of Directors of

IBM Lender Business Process Services, Inc.

resolutions were duly adopted setting forth a proposed amendment of the Certificate of Incorporation of said corporation, declaring said amendment to be advisable and calling a meeting of the stockholders of said corporation for consideration thereof. The resolution setting forth the proposed amendment is as follows:

**RESOLVED**, that the Certificate of Incorporation of this corporation be amended by changing the Article thereof numbered " 1.                          " so that, as amended, said Article shall be and read as follows:

1. The name of the corporation is: Seterus, Inc.

**SECOND**:  That thereafter, pursuant to resolution of its Board of Directors, a special meeting of the stockholders of said corporation was duly called and held upon notice in accordance with Section 222 of the General Corporation Law of the State of Delaware at which meeting the necessary number of shares as required by statute were voted in favor of the amendment.

**THIRD**:   That said amendment was duly adopted in accordance with the provisions of Section 242 of the General Corporation Law of the State of Delaware.

**IN WITNESS WHEREOF**, said corporation has caused this certificate to be signed this 1st            day of June            , 20 11    .

By: /s/Karen B. Pollock

Authorized Officer

Title: Vice-President

Name: Karen B. Pollock

Print or Type

Name **Wilo B. Nunez**
Address **LAW OFFICES OF WILO B. NUNEZ**
        **7340 Firestone Blvd.**
        **Suite 123**
        **Downey, CA 90241**
Telephone **1-562-928-2250**   (FAX)   **1-562-928-2244**

■ Attorney for Debtor
State Bar No. **92974**

☐ Debtor(s) in Pro Se   (Any reference to the singular shall include the plural in the case of joint debtors.)

# UNITED STATES BANKRUPTCY COURT
# CENTRAL DISTRICT OF CALIFORNIA

| List all names (including trade names) used by the debtor within the last 8 years:<br>**Cenelia Navarro** | Chapter 13 Case No.<br><br>**CHAPTER 13 PLAN**<br><br>**CREDITORS MEETING:**<br>Date:<br>Time:<br>Place:<br>**CONFIRMATION HEARING:**<br>Date:<br>Time:<br>Place: |
|---|---|

## NOTICE

This Chapter 13 Plan is proposed by the above Debtor. The Debtor attests that the information stated in this Plan is accurate. Creditors cannot vote on this Plan. However, creditors may object to this Plan being confirmed pursuant to 11 U.S.C. § 1324. Any objection must be in writing and must be filed with the court and served upon the Debtor, Debtor's attorney (if any), and the Chapter 13 Trustee not less than 7 days before the date set for the meeting of creditors. Unless an objection is filed and served, the court may confirm this Plan. The Plan, if confirmed, modifies the rights and duties of the Debtor and creditors to the treatment provided in the Plan as confirmed, with the following IMPORTANT EXCEPTIONS:

Unless otherwise provided by law, each creditor will retain its lien until the earlier of payment of the underlying debt determined under non-bankruptcy law or discharge under 11 U.S.C.§1328. If the case under this chapter is dismissed or converted without completion of the Plan, such lien shall also be retained by such holder to the extent recognized by applicable non-bankruptcy law.

Defaults will be cured using the interest rate set forth below in the Plan. Any ongoing obligation will be paid according to the terms of the Plan.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

EXHIBIT 3

6

Chapter 13 Plan  (Rev. 12/09) - Page 2                                    2009 USBC, Central District of California

**HOLDERS OF SECURED CLAIMS AND CLASS 1 CLAIMANTS WILL BE PAID ACCORDING TO THIS PLAN AFTER CONFIRMATION UNLESS THE SECURED CREDITOR OR CLASS 1 CLAIMANT FILES A PROOF OF CLAIM IN A DIFFERENT AMOUNT THAN THAT PROVIDED IN THE PLAN.** If a secured creditor or a class 1 creditor files a proof of claim, that creditor will be paid according to that creditor's proof of claim, unless the court orders otherwise.

**HOLDERS OF ALL OTHER CLAIMS MUST TIMELY FILE PROOFS OF CLAIMS, IF THE CODE SO REQUIRES, OR THEY WILL NOT BE PAID ANY AMOUNT.** A Debtor who confirms a Plan may be eligible thereafter to receive a discharge of debts to the extent specified in 11 U.S.C. § 1328.

The Debtor proposes the following Plan and makes the following declarations:

I.    **PROPERTY AND FUTURE EARNINGS OR INCOME SUBJECT TO THE SUPERVISION AND CONTROL OF THE CHAPTER 13 TRUSTEE:**

The Debtor submits the following to the supervision and control of the Chapter 13 Trustee:

A.    Payments by Debtor of **$50.00** per month for **60** months.  This monthly Plan Payment will begin within 30 days of the date the petition was filed.

B.    The base plan amount is **$ 3,000.00** which is estimated to pay **2** % of the allowed claims of nonpriority unsecured creditors. If that percentage is less than 100%, the Debtor will pay the Plan Payment stated in this Plan for the full term of the Plan or until the base plan amount is paid in full, and the Chapter 13 Trustee may increase the percentage to be paid to creditors accordingly.

C.    Amounts necessary for the payment of post-petition claims allowed under 11 U.S.C. § 1305.

D.    Preconfirmation adequate protection payments for any creditor who holds an allowed claim secured by personal property where such security interest is attributable to the purchase of such property and preconfirmation payments on leases of personal property whose allowed claim is impaired by the terms proposed in the plan. Preconfirmation adequate protection payments and preconfirmation lease payments will be paid to the Chapter 13 Trustee for the following creditor(s) in the following amounts:

| Creditor/Lessor Name | Collateral Description | Last 4 Digits of Account # | Amount |
|---|---|---|---|
| -NONE- | | | |

Each adequate protection payment or preconfirmation lease payment will commence on or before the 30th day from the date of filing of the case. The Chapter 13 Trustee shall deduct the foregoing adequate protection payment(s) and/or preconfirmation lease payment from the Debtor's Plan Payment and disburse the adequate protection payment or preconfirmation lease payment to the secured(s) creditor(s) at the next available disbursement or as soon as practicable after the payment is received and posted to the Chapter 13 Trustee's account. The Chapter 13 Trustee will take his or her statutory fee on all disbursements made for preconfirmation adequate  protection payments or preconfirmation lease payments.

E.    Other property:  (specify property or indicate none)
        **NONE**

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Chapter 13 Plan  (Rev. 12/09) - Page 3                                                              2009 USBC, Central District of California

**II.   ORDER OF PAYMENTS; CLASSIFICATION AND TREATMENT OF CLAIMS:**
Except as otherwise provided in the plan or by court order, the Chapter 13 Trustee shall disburse all available funds for the payment of claims as follows:

A.   ORDER OF PAYMENTS:

1.   If there are Domestic Support Obligations, the order of priority shall be:

(a)  Domestic Support Obligations and the Chapter 13 Trustee's fee not exceeding the amount accrued on payments made to date;

(b)  Administrative expenses (Class 1(a)) in an amount not exceeding _____% of each Plan Payment until paid in full;

2.   If there are no Domestic Support Obligations, the order of priority shall be the Chapter 13 Trustee's fee not exceeding the amount accrued on payments made to date, and administrative expenses (Class 1(a)) in an amount not exceeding __% of each Plan Payment until paid in full.

3.   Notwithstanding 1 and 2 above, ongoing payments on secured debts that are to be made by the Chapter 13 Trustee from the Plan Payment; such secured debt may be paid by the Chapter 13 Trustee commencing with the inception of Plan Payments.

4.   Subject to 1, 2, and 3 above, pro rata to all other claims except as otherwise provided in the Plan.

5.   No payment shall be made on nonpriority unsecured claims until all secured and priority claims have been paid in full.

*Revised December 2009*                                                                        **F3015-1.1**
Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                    Best Case Bankruptcy

Chapter 13 Plan  (Rev. 12/09) - Page 4                                                    2009 USBC, Central District of California

B.   CLASSIFICATION AND TREATMENT OF CLAIMS:

| CLASS 1 | | | | | |
|---|---|---|---|---|---|
| **ALLOWED UNSECURED CLAIMS ENTITLED TO PRIORITY UNDER 11 U.S.C. §507** | | | | | |
| The Debtor will pay Class 1 claims in full; except the debtor may provide for less than full payment of Domestic Support Obligations pursuant to 11 U.S.C. §1322(a)(4). | | | | | |
| CATEGORY | AMOUNT OF PRIORITY CLAIM | INTEREST RATE, if any | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| a.  Administrative Expenses | | | | | |
| (1)   Chapter 13 Trustee's Fee – estimated at **11%** of all payments to be made to all classes through this Plan. | | | | | |
| (2)   Attorney's Fees | | | | | |
| (3)   Chapter 7 Trustee's Fees | | | | | |
| (4)   Other | | | | | |
| b.  Other Priority Claims | | | | | |
| (1)   Internal Revenue Service | | | | | |
| (2)   Franchise Tax Board | | | | | |
| (3)   Domestic Support Obligation | | | | | |
| (4)   Other | | | | | |
| c.   Domestic Support Obligations that are not to be paid in full in the Plan (Specify Creditor Name): | | | | | |
| | | | | | |

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

Revised December 2009                                                                    **F3015-1.1**
Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                Best Case Bankruptcy

Chapter 13 Plan  (Rev. 12/09) - Page 5                                         2009 USBC, Central District of California

## CLASS 2

### CLAIMS SECURED SOLELY BY PROPERTY THAT IS THE DEBTOR'S PRINCIPAL RESIDENCE ON WHICH OBLIGATION MATURES <u>AFTER</u> THE FINAL PLAN PAYMENT IS DUE

1.  ☐     The post-confirmation monthly mortgage payment will be made by the Chapter 13 Trustee from the Plan Payment to:

2.  ■     The post-confirmation monthly mortgage payment will be made by the Debtor directly to:

**Bac Home Loans Servici**_____                    _____
          (name of creditor)                                          (last 4 digits of account number)

The Debtor will cure all prepetition arrearages for the primary residence through the Plan Payment as set forth below.

| Name of Creditor | Last Four Digits of Account Number | Cure of Default | | | | |
| --- | --- | --- | --- | --- | --- | --- |
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| | | | | | | |
| | | | | | | |

## CLASS 3

### CLAIMS SECURED BY REAL OR PERSONAL PROPERTY WHICH ARE PAID IN FULL DURING THE TERM OF THE PLAN

| Name of Creditor | Last Four Digits of Account No. | CLAIM TOTAL | SECURED CLAIM AMOUNT | INTEREST RATE | Equal Monthly Payment | NUMBER OF MONTHS | TOTAL PAYMENT |
| --- | --- | --- | --- | --- | --- | --- | --- |
| | | | | | | | |
| | | | | | | | |

*Revised December 2009*                                                      **F3015-1.1**
Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                    Best Case Bankruptcy

Chapter 13 Plan  (Rev. 12/09) - Page 6                                    2009 USBC, Central District of California

| CLASS 4 |
|---|

**OTHER SECURED CLAIMS ON WHICH THE LAST PAYMENT IS DUE AFTER THE DATE ON WHICH THE FINAL PAYMENT UNDER THE PLAN IS DUE**

   1.   ☐     The post-confirmation monthly payment pursuant to the promissory note will be made by the Chapter 13 Trustee from the Plan Payment to:

   2.   ☐     The post-confirmation monthly payment pursuant to the promissory note will be made by the Debtor directly to:

_____                    _____
       (name of creditor)                              (last 4 digits of account number)

_____                    _____
       (name of creditor)                              (last 4 digits of account number)

**The Debtor will cure all prepetition arrearages on these claims through the Plan Payment as set forth below.**

| Name of Creditor | Last Four Digits of Account Number | Cure of Default | | | | |
|---|---|---|---|---|---|---|
| | | AMOUNT OF ARREARAGE | INTEREST RATE | MONTHLY PAYMENT | NUMBER OF MONTHS | TOTAL PAYMENT |
| | | | | | | |
| | | | | | | |

| CLASS 5 |
|---|

**NON-PRIORITY UNSECURED CLAIMS**

Debtor estimates that non-priority unsecured claims total the sum of  $153,953.00 .
Class 5 claims will be paid as follows:

(Check one box only.)

■        Class 5 claims (including allowed unsecured amounts from Class 3) are of one class and will be paid pro rata.

OR

☐        Class 5 claims will be divided into subclasses as shown ~~on the attached exhibit~~ *directly below* (which also shows the justification for the differentiation among the subclasses) and the creditors in each subclass will be paid pro rata.

**III.   COMPARISON WITH CHAPTER 7**

The value as of the effective date of the Plan of property to be distributed under the Plan on account of each allowed claim is not less than the amount that would be paid on such claim if the estate of the Debtor were liquidated under chapter 7 of the Bankruptcy Code on such date. The amount distributed to nonpriority unsecured creditors in chapter 7 would be $  0.00  which is estimated to pay  0  % of the scheduled nonpriority unsecured debt.

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised December 2009*                                                                     **F3015-1.1**
Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                       Best Case Bankruptcy

Chapter 13 Plan (Rev. 12/09) - Page 7                                             2009 USBC, Central District of California

## IV.  PLAN ANALYSIS

| | |
|---|---:|
| CLASS 1a | $0.00 |
| CLASS 1b | $0.00 |
| CLASS 1c | $0.00 |
| CLASS 2 | $0.00 |
| CLASS 3 | $0.00 |
| CLASS 4 | $0.00 |
| CLASS 5 | $2,703.00 |
| SUB-TOTAL | $2,703.00 |
| CHAPTER 13 TRUSTEE'S FEE (Estimated  11% unless advised otherwise) | $297.00 |
| TOTAL PAYMENT | $3,000.00 |

## V.  OTHER PROVISIONS

A.  The Debtor rejects the following executory contracts and unexpired leases.

    **Name of Other Party:**                         **Description of contract/lease:**
    -NONE-

B.  The Debtor assumes the executory contracts or unexpired leases set forth in this section. As to each contract or lease assumed, any defaults therein and Debtor's proposal for cure of said default(s) is described in Class 4 of this Plan. The Debtor has a leasehold interest in personal property and will make all post-petition payments directly to the lessor(s):

    **Name of Other Party:**                         **Description of contract/lease:**
    -NONE-

C.  In addition to the payments specified in Class 2 and Class 4, the Debtor will make regular payments, including any preconfirmation payments, directly to the following:

    **Creditor Name:**                               **Monthly Payment:**
    -NONE-

D.  The Debtor hereby surrenders the following personal or real property. (Identify property and creditor to which it is surrendered.)

    **Creditor Name:**                               **Description:**
    **Toyota Motor Credit Co**                    **2008 Toyota Corolla**

E.  The Debtor shall incur no debt greater than $500.00 without prior court approval unless the debt is incurred in the ordinary course of business pursuant to 11 U.S.C. §1304(b) or for medical emergencies.

F.  Miscellaneous provisions: (Use Attachment, if necessary)

    **Chase: Debtor(s) intend to avoid lien.**

G.  The Chapter 13 Trustee is authorized to disburse funds after the date confirmation is announced in open court.

H.  The Debtor will pay timely all post-confirmation tax liabilities directly to the appropriate taxing authorities as they come due.

I.  The Debtor will pay all amounts required to be paid under a Domestic Support Obligation that first became payable after the date of the filing of the petition.

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*Revised December 2009*
Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com

**F3015-1.1**
Best Case Bankruptcy

Chapter 13 Plan  (Rev. 12/09) - Page 8                                    2009 USBC, Central District of California

**VI.    REVESTING OF PROPERTY**

Property of the estate shall not revest in the Debtor until such time as a discharge is granted or the case is dismissed or closed without discharge. Revestment shall be subject to all liens and encumbrances in existence when the case was filed, except those liens avoided by court order or extinguished by operation of law. In the event the case is converted to a case under chapter 7, 11, or 12 of the Bankruptcy Code, the property of the estate shall vest in accordance with applicable law. After confirmation of the Plan, the Chapter 13 Trustee shall have no further authority or fiduciary duty regarding use, sale, or refinance of property of the estate except to respond to any motion for proposed use, sale, or refinance as required by the Local Bankruptcy Rules. Prior to any discharge or dismissal, the Debtor must seek approval of the court to purchase, sell, or refinance real property.

Dated:    September 2, 2010                                    /s/ Wilo B. Nunez

                                                        Wilo B. Nunez
                                                        92974
                                                        Attorney for Debtor(s)


                                                    /s/ Cenelia Navarro

                                                        Cenelia Navarro
                                                        Debtor

*Revised December 2009*                                        **F3015-1.1**
Software Copyright (c) 1996-2010 Best Case Solutions - Evanston, IL - bestcase.com                Best Case Bankruptcy

13

| Attorney or Party Name, Address, Telephone & FAX Nos., State Bar No. & Email Address | FOR COURT USE ONLY |
|---|---|
| Nancy Curry<br>Chapter 13 Standing Trustee<br>606 South Olive Street, Suite 950<br>Los Angeles, CA 90014<br>(213) 689-3014 FAX (213) 689-3055<br>trustee13la@aol.com<br><br><br>*Chapter 13 Trustee* | **FILED & ENTERED**<br><br>JUL 19 2011<br><br>CLERK U.S. BANKRUPTCY COURT<br>Central District of California<br>BY quintana  DEPUTY CLERK |

# UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA- <u>LOS ANGELES</u> DIVISION

| In re:<br><br>Navarro, Cenelia<br><br><br><br><br>Debtor(s). | CASE NO.: 2:10-bk-47444-ER<br><br>CHAPTER: 13<br><br>**ORDER CONFIRMING<br>CHAPTER 13 PLAN**<br><br>DATE: June 23, 2011<br>TIME: 11:00 A.M.<br>COURTROOM: 1568<br>PLACE: 255 E. Temple Street<br>Los Angeles, CA 90012 |
|---|---|

The Chapter 13 Plan or last amended plan, if any (the "Plan") of debtor(s), was filed on <u>09/02/2010</u>.

The Plan was served on the creditors pursuant to Rule 3015 of the Federal Rules of Bankruptcy Procedure. The debtor(s) appeared and was/were examined at a meeting conducted pursuant to 11 U.S.C. § 341(a). The court finding that the Plan meets the requirements of 11 U.S.C. §1325, IT IS ORDERED AS FOLLOWS:

The Plan is hereby confirmed, with the following provisions:

1. Plan payments:

   a. ☒ The amount of each monthly plan payment is $<u>50.00</u>. The due date is the ____<u>2nd</u>____ day of each month for _60_ months.   The Plan provides for the payment of ____<u>2</u>__ % of allowed claims for general unsecure creditors.

   b. ☐ The amount of each monthly plan payment is $_____ for months _____. For months_____, the monthly plan payment is $_____, for months _____ the monthly plan payment is $_____, for months_____ the monthly plan payment is $_____.**[Repeat as needed]** The due date is ____ day of each month.  The Plan provides for the payment of __<u>0</u>__ % of allowed claims for general unsecured creditors.

2. Confirmation of the Plan is without prejudice to the rights of secured creditors with respect to post-petition defaults by the debtor(s).

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

*April 2010*                          Page 1                          **F 3015-1.21.ORDER**

14

3.  Other provisions:

   a.  ☒  This is a base plan with the debtor(s) paying at least $3,000.00 of disposable income into the Plan.  The debtor(s) shall submit statements of income on an annual basis to the Trustee, which income shall be reviewed by the Trustee who may petition the court to increase the monthly plan payment for cause until such time as all allowed unsecured creditors, to the extent they are to be paid during the term of the Plan, are paid 100%.  The Trustee may increase the dividend paid allowed claims until the full amount of the plan base stated in this paragraph has been paid by the debtor(s) or the claims have been paid in full without further notice or order from the court.

   b.  ☒  The Trustee is authorized to make payment to holders of secured claims based on the Plan.  However, a filed claim will control the amount owed the creditor, unless an objection is filed, whether that amount is more or less than the amount provided by the Plan.

   c.  ☒  Counsel for debtor(s) is awarded fees of $4,000.00; having previously received $4,000.00 counsel is entitled to payment of $0 from the estate.

   d.  ☐  See attachment for additional provisions incorporated in this Order.

   e.  ☐  Interlineations:

###

DATED: July 19, 2011

_____
United States Bankruptcy Judge

---

This form is mandatory by Order of the United States Bankruptcy Court for the Central District of California.

April 2010                                        Page 2                          **F 3015-1.21.ORDER**




**This page is part of your document - DO NOT DISCARD**



## 20100225963



Pages:
0015

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**02/19/10 AT 08:00AM**

| | |
|---|---|
| FEES: | 61.00 |
| TAXES: | 0.00 |
| OTHER: | 0.00 |
| PAID: | 61.00 |

EXHIBIT 4

16

02/19/2010

*20100225963*

Recording Requested By:
K. MIKA

After Recording Return To:
BANK OF AMERICA, N.A.

ReconTrust Co./TX2-979-01-07
P.O. Box 619003
Dallas, TX 75261-9003
Prepared By:
KRISTOFER GENILO

——— [Space Above This Line For Recording Data] ———

[Escrow/Closing #]                                    [Doc ID #]

# DEED OF TRUST

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

**(A) "Security Instrument"** means this document, which is dated    FEBRUARY 10, 2010    , together with all Riders to this document.

**(B) "Borrower"** is

CENELIA NAVARRO, AN UNMARRIED WOMAN

Borrower's address is
1759 FIRESTONE BLVD, LOS ANGELES, CA 90001-4059
Borrower is the trustor under this Security Instrument.

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)(d/i)                    Page 1 of 13

**(C)** "**Lender**" is
BANK OF AMERICA, N.A.
Lender is a NATIONAL ASSOCIATION
organized and existing under the laws of THE UNITED STATES
Lender's address is
101 South Tryon Street, Charlotte, NC 28255
Lender is the beneficiary under this Security Instrument.
**(D)** "**Trustee**" is
RECONTRUST COMPANY, N.A.
225 WEST HILLCREST DRIVE, MSN: TO-02, THOUSAND OAKS, CA 91360
**(E)** "**Note**" means the promissory note signed by Borrower and dated    FEBRUARY 10, 2010    . The Note
states that Borrower owes Lender
TWO HUNDRED EIGHTY THREE THOUSAND NINE HUNDRED and 00/100

Dollars (U.S. $ 283,900.00    ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than    MARCH 01, 2040
**(F)** "**Property**" means the property that is described below under the heading "Transfer of Rights in the Property."
**(G)** "**Loan**" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges due under the
Note, and all sums due under this Security Instrument, plus interest.
**(H)** "**Riders**" means all Riders to this Security Instrument that are executed by Borrower. The following Riders are to
be executed by Borrower [check box as applicable]:

| | | |
|---|---|---|
| ☐ Adjustable Rate Rider | ☐ Condominium Rider | ☐ Second Home Rider |
| ☐ Balloon Rider | ☐ Planned Unit Development Rider | ☐ 1-4 Family Rider |
| ☐ VA Rider | ☐ Biweekly Payment Rider | ☐ Other(s) [specify] |

**(I)**    "**Applicable Law**" means all controlling applicable federal, state and local statutes, regulations, ordinances and
administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial
opinions.
**(J)**    "**Community Association Dues, Fees, and Assessments**" means all dues, fees, assessments and other charges that
are imposed on Borrower or the Property by a condominium association, homeowners association or similar organization.
**(K)**    "**Electronic Funds Transfer**" means any transfer of funds, other than a transaction originated by check, draft, or
similar paper instrument, which is initiated through an electronic terminal, telephonic instrument, computer, or magnetic
tape so as to order, instruct, or authorize a financial institution to debit or credit an account. Such term includes, but is not
limited to, point-of-sale transfers, automated teller machine transactions, transfers initiated by telephone, wire transfers,
and automated clearinghouse transfers.
**(L)**    "**Escrow Items**" means those items that are described in Section 3.
**(M)** "**Miscellaneous Proceeds**" means any compensation, settlement, award of damages, or proceeds paid by any third
party (other than insurance proceeds paid under the coverages described in Section 5) for: (i) damage to, or destruction of,
the Property; (ii) condemnation or other taking of all or any part of the Property; (iii) conveyance in lieu of condemnation;
or (iv) misrepresentations of, or omissions as to, the value and/or condition of the Property.
**(N)** "**Mortgage Insurance**" means insurance protecting Lender against the nonpayment of, or default on, the Loan.
**(O)** "**Periodic Payment**" means the regularly scheduled amount due for (i) principal and interest under the Note, plus
(ii) any amounts under Section 3 of this Security Instrument.
**(P)** "**RESPA**" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing
regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or
successor legislation or regulation that governs the same subject matter. As used in this Security Instrument, "RESPA"
refers to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the
Loan does not qualify as a "federally related mortgage loan" under RESPA.
**(Q)** "**Successor in Interest of Borrower**" means any party that has taken title to the Property, whether or not that party
has assumed Borrower's obligations under the Note and/or this Security Instrument.

## TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower irrevocably grants and conveys to Trustee, in trust, with power of sale, the following described property located in the

|                           | COUNTY                        | of | LOS ANGELES                     | : |

[Type of Recording Jurisdiction]                                [Name of Recording Jurisdiction]

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF.

Parcel ID Number: 6027033025                                which currently has the address of

1759 FIRESTONE BLVD, LOS ANGELES

[Street/City]

California 90001-4059    ("Property Address"):

[Zip Code]

TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005  1/01

6

against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

**2.    Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

**3.    Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                    Page 4 of 13

20

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the lien. Within 10 days of the date on which that notice is given, Borrower shall satisfy the lien or take one or more of the actions set forth above in this Section 4.

Lender may require Borrower to pay a one-time charge for a real estate tax verification and/or reporting service used by Lender in connection with this Loan.

5. **Property Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage," and any other hazards including, but not limited to, earthquakes and floods, for which Lender requires insurance. This insurance shall be maintained in the amounts (including deductible levels) and for the periods that Lender requires. What Lender requires pursuant to the preceding sentences can change during the term of the Loan. The insurance carrier providing the insurance shall be chosen by Borrower subject to Lender's right to disapprove Borrower's choice, which right shall not be exercised unreasonably. Lender may require Borrower to pay, in connection with this Loan, either: (a) a one-time charge for flood zone determination, certification and tracking services; or (b) a one-time charge for flood zone determination and certification services and subsequent charges each time remappings or similar changes occur which reasonably might affect such determination or certification. Borrower shall also be responsible for the payment of any fees imposed by the Federal Emergency Management Agency in connection with the review of any flood zone determination resulting from an objection by Borrower.

If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense. Lender is under no obligation to purchase any particular type or amount of coverage. Therefore, such coverage shall cover Lender, but might or might not protect Borrower, Borrower's equity in the Property, or the contents of the Property, against any risk, hazard or liability and might provide greater or lesser coverage than was previously in effect. Borrower acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Borrower could have obtained. Any amounts disbursed by Lender under this Section 5 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

All insurance policies required by Lender and renewals of such policies shall be subject to Lender's right to disapprove such policies, shall include a standard mortgage clause, and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance. Lender shall have the right to hold the policies and renewal certificates. If Lender requires, Borrower shall promptly give to Lender all receipts of paid premiums and renewal notices. If Borrower obtains any form of insurance coverage, not otherwise required by Lender, for damage to, or destruction of, the Property, such policy shall include a standard mortgage clause and shall name Lender as mortgagee and/or as an additional loss payee and Borrower further agrees to generally assign rights to insurance proceeds to the holder of the Note up to the amount of the outstanding loan balance.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower. Unless Lender and Borrower otherwise agree in writing, any insurance proceeds, whether or not the underlying insurance was required by Lender, shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such insurance proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005  1/01

to be paid on such insurance proceeds, Lender shall not be required to pay Borrower any interest or earnings on such proceeds. Fees for public adjusters, or other third parties, retained by Borrower shall not be paid out of the insurance proceeds and shall be the sole obligation of Borrower. If the restoration or repair is not economically feasible or Lender's security would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6.   **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7.   **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8.   **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9.   **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                          Form 3005 1/01

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

**10.   Mortgage Insurance.**  If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a)  Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.

(b)  Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

**11.   Assignment of Miscellaneous Proceeds; Forfeiture.**  All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due,

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                                          Form 3005  1/01

9

with the excess, if any, paid to. Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

**12. Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including,

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                                    Form 3005 1/01

24

but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the **Loan** is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to any power of sale contained in this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                          Form 3005 1/01

attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20.    Sale of Note; Change of Loan Servicer; Notice of Grievance.**  The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

**21.    Hazardous Substances.**  As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to bring a court action to assert the non-existence of a default or any other defense of Borrower to acceleration and sale. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may invoke the power of sale and any other remedies permitted by Applicable Law. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

If Lender invokes the power of sale, Lender shall execute or cause Trustee to execute a written notice of the occurrence of an event of default and of Lender's election to cause the Property to be sold. Trustee shall cause this notice to be recorded in each county in which any part of the Property is located. Lender or Trustee shall mail copies of the notice as prescribed by Applicable Law to Borrower and to the other persons prescribed by Applicable Law. Trustee shall give public notice of sale to the persons and in the manner prescribed by Applicable Law. After the time required by Applicable Law, Trustee, without demand on Borrower, shall sell the Property at public auction to the highest bidder at the time and place and under the terms designated in the notice of sale in one or more parcels and in any order Trustee determines. Trustee may postpone sale of all or any parcel of the Property by public announcement at the time and place of any previously scheduled sale. Lender or its designee may purchase the Property at any sale.

Trustee shall deliver to the purchaser Trustee's deed conveying the Property without any covenant or warranty, expressed or implied. The recitals in the Trustee's deed shall be prima facie evidence of the truth of the statements made therein. Trustee shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including, but not limited to, reasonable Trustee's and attorneys' fees; (b) to all sums secured by this Security Instrument; and (c) any excess to the person or persons legally entitled to it.

**23. Reconveyance.** Upon payment of all sums secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all notes evidencing debt secured by this Security Instrument to Trustee. Trustee shall reconvey the Property without warranty to the person or persons legally entitled to it. Lender may charge such person or persons a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (such as the Trustee) for services rendered and the charging of the fee is permitted under Applicable Law. If the fee charged does not exceed the fee set by Applicable Law, the fee is conclusively presumed to be reasonable.

**24. Substitute Trustee.** Lender, at its option, may from time to time appoint a successor trustee to any Trustee appointed hereunder by an instrument executed and acknowledged by Lender and recorded in the office of the Recorder of the county in which the Property is located. The instrument shall contain the name of the original Lender, Trustee and Borrower, the book and page where this Security Instrument is recorded and the name and address of the successor trustee. Without conveyance of the Property, the successor trustee shall succeed to all the title, powers and duties conferred upon the Trustee herein and by Applicable Law. This procedure for substitution of trustee shall govern to the exclusion of all other provisions for substitution.

13

**25.  Statement of Obligation Fee.**  Lender may collect a fee not to exceed the maximum amount permitted by Applicable Law for furnishing the statement of obligation as provided by Section 2943 of the Civil Code of California.

The undersigned Borrower requests that a copy of any Notice of Default and any Notice of Sale under this Security Instrument be mailed to the Borrower at the address set forth above. A copy of any Notice of Default and any Notice of Sale will be sent only to the address contained in this recorded request. If the Borrower's address changes, a new request must be recorded.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

_Cenelia Navarro_ _____ (Seal)
CENELIA NAVARRO                                    -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

_____ (Seal)
                                                  -Borrower

**CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT**                    Form 3005  1/01

Deed of Trust-CA
1006--CA (06/09)                          Page 12 of 13

28

14

State of California

County of _Los Angeles_____

On _2-13-2010_ before me, _Alma Fernandez, Notary Public_,
personally appeared _Cenelia Navarro_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

**I certify under PENALTY OF PERJURY under the laws of the State of California that the foregoing paragraph is true and correct.**

WITNESS my hand and official seal.

Signature _Alma F._____ (Seal)

```
ALMA FERNANDEZ
COMM. # 1741021
NOTARY PUBLIC - CALIFORNIA
LOS ANGELES COUNTY
My Comm. Expires May 20, 2011
```

CALIFORNIA--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3005 1/01

Deed of Trust-CA
1006--CA (06/09)                    Page 13 of 13

29

CFORDNRB5408                 1/19/2012 1:30:13 PM PAGE  58/103      888-294-5658

# NOTE

FEBRUARY 10, 2010                    LOS ANGELES                    CALIFORNIA
[Date]                               [City]                         [State]

1759 FIRESTONE BLVD, LOS ANGELES, CA 90001-4059
[Property Address]

## 1.   BORROWER'S PROMISE TO PAY

In return for a loan that I have received, I promise to pay U.S. $283,900.00       (this amount is called "Principal"), plus interest, to the order of the Lender. The Lender is
BANK OF AMERICA, N.A.
I will make all payments under this Note in the form of cash, check or money order.

I understand that the Lender may transfer this Note. The Lender or anyone who takes this Note by transfer and who is entitled to receive payments under this Note is called the "Note Holder."

## 2.   INTEREST

Interest will be charged on unpaid principal until the full amount of Principal has been paid. I will pay interest at a yearly rate of   5.375 %.

The interest rate required by this Section 2 is the rate I will pay both before and after any default described in Section 6(B) of this Note.

## 3.   PAYMENTS

### (A)  Time and Place of Payments

I will pay principal and interest by making a payment every month.

I will make my monthly payment on the  FIRST         day of each month beginning on APRIL 01, 2010
I will make these payments every month until I have paid all of the principal and interest and any other charges described below that I may owe under this Note. Each monthly payment will be applied as of its scheduled due date and will be applied to interest before Principal. If, on  MARCH 01, 2040      , I still owe amounts under this Note, I will pay those amounts in full on that date, which is called the "Maturity Date."

I will make my monthly payments at
P.O. Box 10219, Van Nuys, CA 91410-0219
or at a different place if required by the Note Holder.

### (B)  Amount of Monthly Payments

My monthly payment will be in the amount of U.S. $1,589.76

## 4.   BORROWER'S RIGHT TO PREPAY

I have the right to make payments of Principal at any time before they are due. A payment of Principal only is known as a "Prepayment." When I make a Prepayment, I will tell the Note Holder in writing that I am doing so. I may not designate a payment as a Prepayment if I have not made all the monthly payments due under the Note.

I may make a full Prepayment or partial Prepayments without paying a Prepayment charge. The Note Holder will use my Prepayments to reduce the amount of Principal that I owe under this Note. However, the Note Holder may apply my Prepayment to the accrued and unpaid interest on the Prepayment amount, before applying my Prepayment to reduce the Principal amount of the Note. If I make a partial Prepayment, there will be no changes in the due date or in the amount of my monthly payment unless the Note Holder agrees in writing to those changes.

## 5.   LOAN CHARGES

If a law, which applies to this loan and which sets maximum loan charges, is finally interpreted so that the interest or other loan charges collected or to be collected in connection with this loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from me which exceeded permitted limits will be refunded to me. The Note Holder may choose to make this refund by reducing the Principal I owe under this Note or by making a direct payment to me. If a refund reduces Principal, the reduction will be treated as a partial Prepayment.

## 6.   BORROWER'S FAILURE TO PAY AS REQUIRED

### (A)  Late Charge for Overdue Payments

If the Note Holder has not received the full amount of any monthly payment by the end of  FIFTEEN          calendar days after the date it is due, I will pay a late charge to the Note Holder. The amount of the charge will be   5.000 % of my overdue payment of principal and interest. I will pay this late charge promptly but only once on each late payment.

### (B)  Default

If I do not pay the full amount of each monthly payment on the date it is due, I will be in default.

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT                    Form 3200  1/01
Fixed Rate Note
2006N-XX (09/08)(d/i)                              Page 1 of 2



EXHIBIT 5

30

**(C)  Notice of Default**

If I am in default, the Note Holder may send me a written notice telling me that if I do not pay the overdue amount by a certain date, the Note Holder may require me to pay immediately the full amount of Principal which has not been paid and all the interest that I owe on that amount. That date must be at least 30 days after the date on which the notice is mailed to me or delivered by other means.

**(D)  No Waiver By Note Holder**

Even if, at a time when I am in default, the Note Holder does not require me to pay immediately in full as described above, the Note Holder will still have the right to do so if I am in default at a later time.

**(E)  Payment of Note Holder's Costs and Expenses**

If the Note Holder has required me to pay immediately in full as described above, the Note Holder will have the right to be paid back by me for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorneys' fees.

**7.  GIVING OF NOTICES**

Unless applicable law requires a different method, any notice that must be given to me under this Note will be given by delivering it or by mailing it by first class mail to me at the Property Address above or at a different address if I give the Note Holder a notice of my different address.

Any notice that must be given to the Note Holder under this Note will be given by delivering it or by mailing it by first class mail to the Note Holder at the address stated in Section 3(A) above or at a different address if I am given a notice of that different address.

**8.  OBLIGATIONS OF PERSONS UNDER THIS NOTE**

If more than one person signs this Note, each person is fully and personally obligated to keep all of the promises made in this Note, including the promise to pay the full amount owed. Any person who is a guarantor, surety or endorser of this Note is also obligated to do these things. Any person who takes over these obligations, including the obligations of a guarantor, surety or endorser of this Note, is also obligated to keep all of the promises made in this Note. The Note Holder may enforce its rights under this Note against each person individually or against all of us together. This means that any one of us may be required to pay all of the amounts owed under this Note.

**9.  WAIVERS**

I and any other person who has obligations under this Note waive the rights of Presentment and Notice of Dishonor. "Presentment" means the right to require the Note Holder to demand payment of amounts due. "Notice of Dishonor" means the right to require the Note Holder to give notice to other persons that amounts due have not been paid.

**10.  UNIFORM SECURED NOTE**

This Note is a uniform instrument with limited variations in some jurisdictions. In addition to the protections given to the Note Holder under this Note, a Mortgage, Deed of Trust, or Security Deed (the "Security Instrument"), dated the same date as this Note, protects the Note Holder from possible losses which might result if I do not keep the promises which I make in this Note. That Security Instrument describes how and under what conditions I may be required to make immediate payment in full of all amounts I owe under this Note. Some of those conditions are described as follows:

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

WITNESS THE HAND(S) AND SEAL(S) OF THE UNDERSIGNED.

_Cenelia Navarro_ _____ (Seal)
CENELIA NAVARRO                -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

_____ (Seal)
                              -Borrower

*[Sign Original Only]*

MULTISTATE FIXED RATE NOTE--Single Family--Fannie Mae/Freddie Mac UNIFORM INSTRUMENT          Form 3200  1/01

Fixed Rate Note
2005N-XX (09/08)                          Page 2 of 2

31

PAY TO THE ORDER OF

WITHOUT RECOURSE
BANK OF AMERICA, N.A.

BY _____

MICHELE SJOLANDER
SENIOR VICE PRESIDENT



**This page is part of your document - DO NOT DISCARD**

## 20122005570



Pages:
0002

Recorded/Filed in Official Records
Recorder's Office, Los Angeles County,
California

**12/26/12 AT 04:04PM**

| | |
|---|---|
| FEES: | 18.00 |
| TAXES: | 0.00 |
| | 0.00 |
| | 18.00 |

## EXHIBIT 6

33

Recording requested by:
BANK OF AMERICA, N.A.

When recorded mail to:
BANK OF AMERICA, N.A.
DOCUMENT PROCESSING MAIL CODE
TX2-979-01-19
4500 AMON CARTER BLVD.
FORT WORTH, TX 76155
Attn: ASSIGNMENT UNIT



12/26/2012
*20122005570*

## CORPORATION ASSIGNMENT OF DEED OF TRUST
### Doc. ID#
### Commitment#

For value received, the undersigned, BANK OF AMERICA, N.A., 1800 TAPO CANYON
ROAD, SIMI VALLEY, CA 93063, hereby grants, assigns and transfers to:
FEDERAL NATIONAL MORTGAGE ASSOCIATION
14523 SW MILLIKAN WAY, #200, BEAVERTON, OR 97005

All beneficial interest under that certain Deed of Trust dated 2/10/10,
executed by: CENELIA NAVARRO, Trustor as per TRUST DEED recorded as
Instrument No. 100225963 on 2/19/10 in Book ———————— Page ———————— of
official records in the County Recorder's Office of LOS ANGELES County,
CALIFORNIA.
      Tax Parcel = 6027033025,    LOS ANGELES COUNTY TAX COLLECTOR
Original Mortgage $283,900.00
1759 FIRESTONE BLVD, LOS ANGELES, CA 90001    * 20100 225963 el.

Together with the Note or Notes therein described or referred to, the money
due and to become due thereon with interest, and all rights accrued or to
accrue under said Deed of Trust.

Dated: 11/29/2012        BANK OF AMERICA, N.A.

                  By    Cynthia Romo
                  CYNTHIA ROMO, ASSISTANT VICE PRESIDENT

State of California
County of Ventura

On 11/29/2012 before me, LORI FILIPA KOSOR , Notary Public, personally
appeared CYNTHIA ROMO, who proved to me on the basis of satisfactory evidence
to be the person(s) whose name(s) is/are subscribed to the within instrument
and acknowledged to me that he/she/they executed the same in his/her their
authorized capacity(ies), and that by his/her/their signature(s) on the
instrument the person(s), or the entity upon behalf of which the person(s)
acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of California
that the foregoing paragraph is true and correct.

Witness my hand and official seal.

Signature: Lori Filipa Kosor
            LORI FILIPA KOSOR



LORI FILIPA KOSOR
Commission # 1970831
Notary Public - California
Ventura County
My Comm. Expires Nov 9, 2013

Prepared by: MARGARET MAGALLAN
1800 TAPO CANYON ROAD
SIMI VALLEY, CA 93063
Phone#: (213) 345-0981

Contact Federal National Mortgage Association for this
instrument c/o Seterus, Inc., 14523 SW Millikan Way #200
Beaverton, OR 97005, (888)570-5277,
which is responsible for receiving payments.

**Loan#**                    ***NAVARRO, CENELIA***

**PAYMENT HISTORY**

| | |
|---|---|
| *Investor ID* | |
| *Portfolio Status* | BK Non Performing |
| *Pool* | 2001 |
| *Next Due Date* | 10/1/2014 |
| *Service Start/Transfer Date* | |
| *BK Pst Pet Next Due* | |
| *UPB* | $264,514.48 |
| *Escrow Advance* | $0.00 |
| *Total Corp Adv* | $225.00 |
| *Total Prior Servicer Adv* | |
| *Total Unpaid Prin and Int* | $9,982.15 |
| *Lien Position* | 1 |
| *Commitment #* | |



| acct type | application method | application type | charge due date | charge paid date | actual posting date | total paid amt | applied principal amt | applied interest amt | applied suspense amt | applied charges amt |
|---|---|---|---|---|---|---|---|---|---|---|
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 9/1/2014 | 2/2/2015 | 2/2/2015 | $1,589.76 | $403.15 | $1,186.61 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 2/2/2015 | ($339.21) | $0.00 | $0.00 | ($339.21) | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 8/1/2014 | 1/2/2015 | 1/2/2015 | $1,589.76 | $401.35 | $1,188.41 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 1/2/2015 | ($339.21) | $0.00 | $0.00 | ($339.21) | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 7/1/2014 | 12/1/2014 | 12/1/2014 | $1,589.76 | $399.56 | $1,190.20 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 12/1/2014 | ($339.21) | $0.00 | $0.00 | ($339.21) | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 6/1/2014 | 11/3/2014 | 11/3/2014 | $1,589.76 | $397.78 | $1,191.98 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 10/1/2014 | $1,657.22 | $0.00 | $0.00 | $1,657.22 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 5/1/2014 | 8/28/2014 | 8/28/2014 | $1,589.76 | $396.01 | $1,193.75 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 8/28/2014 | ($339.21) | $0.00 | $0.00 | ($339.21) | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 4/1/2014 | 7/28/2014 | 7/28/2014 | $1,589.76 | $394.24 | $1,195.52 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 7/28/2014 | ($339.21) | $0.00 | $0.00 | ($339.21) | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 3/1/2014 | 6/30/2014 | 6/30/2014 | $1,589.76 | $392.48 | $1,197.28 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 6/30/2014 | ($339.21) | $0.00 | $0.00 | ($339.21) | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 2/1/2014 | 5/28/2014 | 5/28/2014 | $1,589.76 | $390.73 | $1,199.03 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 5/28/2014 | ($360.47) | $0.00 | $0.00 | ($360.47) | $0.00 |

| acct type | application method | application type | charge due date | charge paid date | actual posting date | total paid amt | applied principal amt | applied interest amt | applied suspense amt | applied charges amt |
|---|---|---|---|---|---|---|---|---|---|---|
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 1/1/2014 | 4/28/2014 | 4/28/2014 | $1,589.76 | $388.99 | $1,200.77 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 4/28/2014 | ($360.47) | $0.00 | $0.00 | ($360.47) | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 3/28/2014 | $1,657.22 | $0.00 | $0.00 | $1,657.22 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 12/1/2013 | 2/7/2014 | 2/7/2014 | $1,589.76 | $387.26 | $1,202.50 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 2/7/2014 | $32.31 | $0.00 | $0.00 | $32.31 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 11/1/2013 | 1/10/2014 | 1/10/2014 | $1,589.76 | $385.53 | $1,204.23 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 1/10/2014 | $32.31 | $0.00 | $0.00 | $32.31 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 10/1/2013 | 11/7/2013 | 11/7/2013 | $1,589.76 | $383.81 | $1,205.95 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 11/7/2013 | $3.09 | $0.00 | $0.00 | $3.09 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 9/1/2013 | 10/9/2013 | 10/9/2013 | $1,589.76 | $382.10 | $1,207.66 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 10/9/2013 | $3.09 | $0.00 | $0.00 | $3.09 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 8/1/2013 | 9/9/2013 | 9/9/2013 | $1,589.76 | $380.39 | $1,209.37 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 9/9/2013 | $3.09 | $0.00 | $0.00 | $3.09 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 7/1/2013 | 8/7/2013 | 8/7/2013 | $1,589.76 | $378.70 | $1,211.06 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 8/7/2013 | $3.09 | $0.00 | $0.00 | $3.09 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 6/1/2013 | 7/9/2013 | 7/9/2013 | $1,589.76 | $377.01 | $1,212.75 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 5/1/2013 | 6/7/2013 | 6/7/2013 | $1,589.76 | $375.33 | $1,214.43 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 6/7/2013 | $82.31 | $0.00 | $0.00 | $82.31 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 4/1/2013 | 6/5/2013 | 6/5/2013 | $1,589.76 | $373.65 | $1,216.11 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 6/5/2013 | $3.09 | $0.00 | $0.00 | $3.09 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 3/1/2013 | 5/8/2013 | 5/8/2013 | $1,589.76 | $371.99 | $1,217.77 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 5/8/2013 | $3.09 | $0.00 | $0.00 | $3.09 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 2/1/2013 | 4/8/2013 | 4/8/2013 | $1,589.76 | $370.33 | $1,219.43 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 1/1/2013 | 3/7/2013 | 3/7/2013 | $1,589.76 | $368.68 | $1,221.08 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 12/1/2012 | 2/7/2013 | 2/7/2013 | $1,589.76 | $367.03 | $1,222.73 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 11/1/2012 | 1/4/2013 | 1/4/2013 | $1,589.76 | $365.40 | $1,224.36 | $0.00 | $0.00 |
| LOAN | REGULAR PAYMENT | SUSPENSE | | | 1/4/2013 | ($0.78) | $0.00 | $0.00 | ($0.78) | $0.00 |
| LOAN | REGULAR PAYMENT | LOAN INSTALLMENT | 10/1/2012 | 1/3/2013 | 1/3/2013 | $1,589.76 | $363.77 | $1,225.99 | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 9/1/2014 | 2/2/2015 | 2/2/2015 | $406.67 | $406.67 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 2/1/2015 | $0.00 | $0.39 | ($0.39) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 8/1/2014 | 1/2/2015 | 1/2/2015 | $406.67 | $406.67 | $0.00 | $0.00 | $0.00 |



| acct type | application method | application type | charge due date | charge paid date | actual posting date | total paid amt | applied principal amt | applied interest amt | applied suspense amt | applied charges amt |
|---|---|---|---|---|---|---|---|---|---|---|
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 12/1/2014 | $0.00 | $2.19 | ($2.19) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 7/1/2014 | 12/1/2014 | 12/1/2014 | $406.67 | $406.67 | $0.00 | $0.00 | $0.00 |
| ESCROW | ESCROW - INSURANCE | QBE FIRST INS-WIRE | | | 11/26/2014 | ($52.00) | ($52.00) | $0.00 | $0.00 | $0.00 |
| ESCROW | ESCROW - TAXES | LOS ANGELES COUNTY-TAX | | | 11/20/2014 | ($2,104.13) | ($2,104.13) | $0.00 | $0.00 | $0.00 |
| ESCROW | ESCROW - INSURANCE | QBE FIRST INS-WIRE | | | 11/18/2014 | ($637.00) | ($637.00) | $0.00 | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 6/1/2014 | 11/3/2014 | 11/3/2014 | $406.67 | $406.67 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 11/1/2014 | $0.00 | $3.06 | ($3.06) | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 10/1/2014 | $0.00 | $2.96 | ($2.96) | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 9/1/2014 | $0.00 | $2.45 | ($2.45) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 5/1/2014 | 8/28/2014 | 8/28/2014 | $406.67 | $406.67 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 8/1/2014 | $0.00 | $1.75 | ($1.75) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 4/1/2014 | 7/28/2014 | 7/28/2014 | $406.67 | $406.67 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 7/1/2014 | $0.00 | $0.96 | ($0.96) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 3/1/2014 | 6/30/2014 | 6/30/2014 | $406.67 | $406.67 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 6/1/2014 | $0.00 | $0.35 | ($0.35) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 2/1/2014 | 5/28/2014 | 5/28/2014 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 5/1/2014 | $0.00 | $0.02 | ($0.02) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 1/1/2014 | 4/28/2014 | 4/28/2014 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 4/1/2014 | $0.00 | $1.19 | ($1.19) | $0.00 | $0.00 |
| ESCROW | ESCROW - TAXES | LOS ANGELES COUNTY-TAX | | | 3/13/2014 | ($2,096.41) | ($2,096.41) | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 3/1/2014 | $0.00 | $2.63 | ($2.63) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 12/1/2013 | 2/7/2014 | 2/7/2014 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 2/1/2014 | $0.00 | $2.14 | ($2.14) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 11/1/2013 | 1/10/2014 | 1/10/2014 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 1/1/2014 | $0.00 | $1.62 | ($1.62) | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 12/1/2013 | $0.00 | $3.65 | ($3.65) | $0.00 | $0.00 |
| ESCROW | ESCROW - INSURANCE | QBE FIRST INS-WIRE | | | 11/18/2013 | ($677.00) | ($677.00) | $0.00 | $0.00 | $0.00 |
| ESCROW | ESCROW - TAXES | LOS ANGELES COUNTY-TAX | | | 11/15/2013 | ($2,096.43) | ($2,096.43) | $0.00 | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 10/1/2013 | 11/7/2013 | 11/7/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 11/1/2013 | $0.00 | $5.39 | ($5.39) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 9/1/2013 | 10/9/2013 | 10/9/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |



| acct type | application method | application type | charge due date | charge paid date | actual posting date | total paid amt | applied principal amt | applied interest amt | applied suspense amt | applied charges amt |
|---|---|---|---|---|---|---|---|---|---|---|
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 10/1/2013 | $0.00 | $4.50 | ($4.50) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 8/1/2013 | 9/9/2013 | 9/9/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 9/1/2013 | $0.00 | $3.98 | ($3.98) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 7/1/2013 | 8/7/2013 | 8/7/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 8/1/2013 | $0.00 | $3.20 | ($3.20) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 6/1/2013 | 7/9/2013 | 7/9/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 7/1/2013 | $0.00 | $2.33 | ($2.33) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 5/1/2013 | 6/7/2013 | 6/7/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 4/1/2013 | 6/5/2013 | 6/5/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 6/1/2013 | $0.00 | $1.04 | ($1.04) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 3/1/2013 | 5/8/2013 | 5/8/2013 | $427.93 | $427.93 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 5/1/2013 | $0.00 | $0.35 | ($0.35) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 2/1/2013 | 4/8/2013 | 4/8/2013 | $431.02 | $431.02 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 4/1/2013 | $0.00 | $2.10 | ($2.10) | $0.00 | $0.00 |
| ESCROW | ESCROW - TAXES | LOS ANGELES COUNTY-TAX | | | 3/22/2013 | ($2,106.60) | ($2,106.60) | $0.00 | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 1/1/2013 | 3/7/2013 | 3/7/2013 | $431.02 | $431.02 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 3/1/2013 | $0.00 | $2.19 | ($2.19) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 12/1/2012 | 2/7/2013 | 2/7/2013 | $431.02 | $431.02 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 2/1/2013 | $0.00 | $1.72 | ($1.72) | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 11/1/2012 | 1/4/2013 | 1/4/2013 | $431.02 | $431.02 | $0.00 | $0.00 | $0.00 |
| ESCROW | REGULAR PAYMENT | ESCROW | 10/1/2012 | 1/3/2013 | 1/3/2013 | $431.02 | $431.02 | $0.00 | $0.00 | $0.00 |
| ESCROW | INTEREST ON ESCROW | ESCROW | | | 1/1/2013 | $0.00 | $0.22 | ($0.22) | $0.00 | $0.00 |



```
                         REINSTATEMENT SCREEN
      Loan:      5 NAVARRO, CENELIA           Co-Borr:


      Good Thru    : 02/04/15          Last Analysis : 03/01/14
      P/I Payments :      7948.80      Bal as of Date: 02/04/15
      T/I Payments :      2033.35      UPB         :    264514.48
      Escrow Amt Due :        .00      Escrow Balance:     -642.61
      Arrearage Pmts :        .00      Delq Non-Esc  : N
      Arrearage Bal  :        .00      Escrow Arr Bal:        .00
      Type 2 chrgs :          .00      Next Due    : 10/01/14
      Type 3 chrgs :       225.00
      Type 5 chrgs :          .00
      Type 9 chrgs :       635.92
      Suspense   (-):      753.01      Prepared By  : ghattas   02/04/15
      Sec Deposit (-):       .00       Confirmed By :
      Anticipate Fees:       .00


      Total        :     10090.06



            (C)onfirm  (P)rint  (E)dit  (D)etail  (H)istory  (O)ther chrgs:

      Environment: Production / Default    Host: aprod1pulse01.nw.lbps.com   Version: 1.2.0.0
```

EXHIBIT 8

39

```
                          OPEN CHARGES
             NAVARRO, CENELIA          Anticipated Fees/Costs Owed:
Pay for Prior Svcr Adv :              Good Thru:   /  /
Distribute Prior Adv To:              Anticipated Fees/Costs Disb:
                                      Payoff/Reinstat:
Type  PA Duedat Pmtdat    Amt Due     Amt Pd  Principal    Interest Des  Vouch
----- -- ------ ------ ----------  ---------- ----------  ---------- ---- ------
  1      020115           1589.76        .00     412.26     1177.50 LOAN
  1      020115            406.67        .00        .00         .00 Taxe
  1      010115           1589.76        .00     410.42     1179.34 LOAN
  1      010115            406.67        .00        .00         .00 Taxe
  1      120114           1589.76        .00     408.59     1181.17 LOAN
  1      120114            406.67        .00        .00         .00 Taxe
  1      110114           1589.76        .00     406.77     1182.99 LOAN
  1      110114            406.67        .00        .00         .00 Taxe
  1      100114           1589.76        .00     404.96     1184.80 LOAN
  1      100114            406.67        .00        .00         .00 Taxe
 3.2K    011515            15.00         .00        .00         .00 PROP19379686
 3.2K    111914            15.00         .00        .00         .00 PROP18652901
 3.2K    100914            15.00         .00        .00         .00 PROP17910071
 3.2K    091814            15.00         .00        .00         .00 PROP17625344


           (N)ext (P)rev (B)egin (E)nd (Q)uit (S)ummary e(X)panded:

Environment: Production / Default    Host: aprod1pulse01.nw.lbps.com    Version: 1.2.0.0
```

```
                         OPEN CHARGES
L.                  ELIA          Anticipated Fees/Costs Owed:
Pay for Prior Svcr Adv :         Good Thru:   /  /
Distribute Prior Adv To:         Anticipated Fees/Costs Disb:
                                 Payoff/Reinstat:
Type  PA Duedat Pmtdat   Amt Due    Amt Pd  Principal    Interest Des  Vouch
----- -- ------ ------ ---------- ---------- ---------- ---------- ---- ------
 3.2K    071714          15.00       .00       .00        .00 PROP16838412
 3.2K    040414          15.00       .00       .00        .00 PROP15594660
 3.2K    021914          15.00       .00       .00        .00 PROP15098898
 3.2K    012914          15.00       .00       .00        .00 PROP14852022
 3.2K    010714          15.00       .00       .00        .00 PROP14590789
 3.2K    062013          15.00       .00       .00        .00 PROP12319243
 3.2K    051513          15.00       .00       .00        .00 PROP11978731
 3.2K    041713          15.00       .00       .00        .00 PROP11626210
 3.2K    032113          15.00       .00       .00        .00 PROP11248688
 3.2K    021213          15.00       .00       .00        .00 PROP10889984
 3.2K    011013          15.00       .00       .00        .00 PROP10375692
 9.4B    011615          79.49       .00       .00        .00 LATE
 9.4B    121614          79.49       .00       .00        .00 LATE
 9.4B    101614          79.49       .00       .00        .00 LATE


          (N)ext (P)rev (B)egin (E)nd (Q)uit (S)ummary e(X)panded:

Environment: Production / Default    Host: aprod1pulse01.nw.lbps.com    Version: 1.2.0.0
```

41

```
                          OPEN CHARGES
            NAVARRO, CENELIA        Anticipated Fees/Costs Owed:
Pay for Prior Svcr Adv :           Good Thru:   /  /
Distribute Prior Adv To:           Anticipated Fees/Costs Disb:
                                   Payoff/Reinstat:
Type  PA Duedat Pmtdat    Amt Due    Amt Pd  Principal   Interest Des  Vouch
----- -- ------ ------ ---------- ---------- ---------- ---------- ---- ------
 9.4B    091614            79.49        .00        .00        .00 LATE
 9.4B    081814            79.49        .00        .00        .00 LATE
 9.4B    071614            79.49        .00        .00        .00 LATE
 9.4B    121613            79.49        .00        .00        .00 LATE
 9.4B    012913            79.49        .00        .00        .00 LATE      _
                       _____
Total Open Chgs        10843.07       Suspense Balance:     753.01


            (N)ext (P)rev (B)egin (E)nd (Q)uit (S)ummary e(X)panded:

Environment: Production / Default   Host: aprod1pulse01.nw.lbps.com   Version: 1.2.0.0
```

42